OPINION OF THE COURT
Louis B. York, J.
In this action, plaintiff moves to obtain sanctions against defendants for failure to comply with discovery. Lenox Hill cross-moves to obtain a protective order concerning some of *760 plaintiffs demanded discovery.[1] Among other things, this motion and cross motion require the court to address the scope of CPLR 3101 (f), which governs the discoverability of insurance information.[2]
BACKGROUND
Between October 1984 and January 1985, Dale Korn was a patient in the care of defendant Lenox Hill Hospital (Lenox Hill). During this time, Ms. Korn received transfusions of units of blood obtained by Lenox Hill Hospital from the Blood Center. According to plaintiff, some of the blood was contaminated with the human immunodeficiency virus (HIV), the virus that causes the acquired immune deficiency syndrome (AIDS); and, through the blood transfusions, Ms. Korn became infected with HIV. Plaintiff states that Ms. Korn was diagnosed with AIDS around April of 1990. Tragically, she died of AIDS-related illnesses on June 20, 1990.
Following her death, in April of 1991, her son, David Weiner, commenced this action individually and as administrator of his mother’s estate, naming both Lenox Hill and the Blood Center as defendants. Lenox Hill and the Blood Center answered separately.
INSURANCE INFORMATION
Plaintiff and Lenox Hill dispute Lenox Hill’s duties with respect to the production of insurance materials. Plaintiff has demanded that Lenox Hill provide information about pending and paid claims for the relevant period; defendant has supplied information about its insurance coverage but has failed to turn over these additional materials. Because insurance information provided by Lenox Hill suggests that Lenox Hill has insufficient coverage, plaintiff states that the further information he requests is particularly appropriate. In addition, plaintiff cites case law supporting his request for disclosure of this material. I find that Lenox Hill need not disclose this additional information and grant its motion for a protective order.
Under CPLR 3101 (f), a claimant may "obtain discovery of *761 the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment.” The purpose of this rule is "to accelerate settlement of claims by affording the plaintiff knowledge of the limits of defendant’s liability policies” by enabling the litigants to enter into realistic settlement negotiations. (Russo v Rochford, 123 Misc 2d 55, 68 [Sup Ct, Queens County 1984]; see, St. Paul Fire & Mar. Ins. Co. v Bernstein Mgt. Corp., 158 Misc 2d 1047, 1049 [Civ Ct, NY County 1993].)
Courts have attempted to liberally interpret the statute to effectuate this important purpose — even, in some circumstances, going beyond what the provision authorizes. For example, courts have held that CPLR 3101 (f) also gives a plaintiff the right to discover "those matters bearing upon the existence and scope of coverage.” (PCB Piezotronics v Change, 179 AD2d 1089 [4th Dept 1992] [citations omitted], lv granted 184 AD2d 1092 [4th Dept 1992], appeal withdrawn 80 NY2d 972 [1992].) In addition, some courts have required a defendant to reveal the number of claims brought against it during the applicable period, the amount sought in each of these claims and the amount already paid under the policy. (E.g., Greenwald v Eiseman, 120 AD2d 564 [2d Dept 1986]; Folgate v Brookhaven Mem. Hosp., 86 Misc 2d 191 [Sup Ct, Suffolk County 1976].) The Court of Appeals has not addressed this issue; neither has the First Department ruled on the scope of CPLR 3101 (f).
I conclude that, under CPLR 3101 (f), plaintiff does not have the right to the information he requests. The language of the statute is unambiguous, enabling a plaintiff to discover the existence and contents of the insurance agreements. (CPLR 3101 [f].) The provision does not allow a plaintiff to go beyond those parameters. It is a fundamental principle of statutory construction that, when a statute is clear on its face, courts should not resort to statutory interpretation. (McKinney’s Cons Laws of NY, Book 1, Statutes § 76; Lloyd v Grella, 83 NY2d 537, 545-546 [1994], rearg denied 83 NY2d 1001 [1994].) Courts depart from this general rule only when "the literal language of the statute * * * does not express the statute’s manifest intent and purpose.” (Abood v Hospital Ambulance Serv., 30 NY2d 295, 298 [1972]; see, e.g., Ford v American Tel. & Tel. Co., 154 Misc 2d 894, 898-899 [Sup Ct, NY County 1992].)
There has been no showing that the statute as written is *762 inconsistent with the legislative purpose of furthering the settlement negotiation process. In fact, enabling plaintiffs to obtain information regarding the contents of defendants’ insurance policies facilitates the settlement process. Those courts reading CPLR 3101 (f) to allow plaintiffs to discover this additional information have concluded that without it, plaintiffs cannot as realistically determine the amount of funds still available under the policy. (See, Folgate v Brookhaven Mem. Hosp., 86 Misc 2d, at 193, supra.) Regardless of the logic of this reasoning, it constitutes a determination of how to best effectuate a legislative policy — and thus is exactly the kind of judicial legislating which has been expressly prohibited by statute and by the Court of Appeals.
In addition, this type of judicial legislation may yield a result inconsistent with legislative policy. CPLR 3101 (f) altered a long-standing common-law rule. (See, PCB Piezotronics v Change, 179 AD2d, at 1089, supra [Boomer, J. P., and Pine, J., dissenting].) The Legislature may have deliberately limited the discovery of immaterial insurance information to avoid adding tremendously to the defendant’s discovery burden or allowing disclosure of information about lawsuits involving nonparties. Thus, by broadening the scope of discovery the courts could destroy a carefully drawn balance between competing concerns.
A few New York cases find support for broad disclosure of insurance information in Federal court interpretations of Federal Rules of Civil Procedure, rule 26 (b) (2), which the New York Legislature adopted verbatim in CPLR 3101 (f). (See, e.g., Folgate v Brookhaven Mem. Hosp., 86 Misc 2d, at 192-193, supra.) This reliance is misplaced. In Union Carbide Corp. v Travelers Indem. Co. (61 FRD 411 [WD Pa 1973]), for example, the Federal District Court concluded that rule 26 (b) (2) enables a plaintiff to seek information about "the possible exhaustion of policy limits by other claims.” (Union Carbide Corp. v Travelers Indem. Co., 61 FRD, at 413, supra.) However, in Union Carbide, the codefendant insurers disputed the coverage afforded to the plaintiff under the two policies. Thus, the court allowed the discovery because the information requested was "reasonably calculated to lead to the discovery of admissible evidence” concerning the insurance dispute and not because of settlement negotiation issues. (Supra [citation omitted] [emphasis added].) Although citing rule 26 (b) (2), the court actually found the additional information, which was potentially material to the issues in controversy, discoverable *763 under rule 26 (b) (1). (Fed Rules Civ Pro, rule 26 [b] [1] [allowing discovery of nonprivileged information if relevant to claims or defenses]; see also, United States v Mattiace Indus., 1987 WL 47784, *3 [ED NY, Sept. 25, 1987] [rule 26 (b) (2) only requires discovery of existence and contents of policy; discoverability of other information in possession of insurer is "covered by the other discovery rules”].)
This court does not dispute that, where insurance information is relevant to the substance of the case, that information may be discoverable under CPLR 3101 (a) — the provision analogous to rule 26 (b) (1). However, where it is not relevant to the case itself, information about pending claims is not discoverable. Of course, nothing prevents defendants from indicating the amount of insurance money still available to them; and, in fact, it is likely that they will reveal this information during any serious settlement negotiations.
CONCLUSION
For the reasons above, I grant Lenox Hill’s motion for a protective order and hold that it need not provide information about pending claims.

. Defendant New York Blood Center, Inc. (Blood Center) has not responded to this motion. Furthermore, it was not involved in the insurance dispute between Lenox Hill and plaintiff which is discussed in this decision.

. The remainder of the issues addressed have been excised from the decision for publication purposes.